Good morning. My name is Sherelle Corpus and I am privileged to present the petitioner in this matter. I ask that the time be divided up with ten minutes total for me and five minutes for the amicus, but with me saving three minutes for Roberto. May it please the court. This court's decision in ALACA controls the outcome of this matter before the court. That's really the issue. Why does it control the outcome? It controls the outcome because the court in ALACA did what it was supposed to do in interpreting the statute. It did a step one Chevron analysis and analyzed the plain language of the statute. Now the court in ALACA might not have used the term unambiguous in its decision, but if one looks to the totality of the opinion and takes into consideration the nature, the mandatory nature of the withholding statute, it's clear that the court found the statute to be unambiguous. But when ALACA was decided, there was no decision of the BIA to review, so it would never have to deal with Chevron issues and deference because there was nothing to defer to at the time, right? Correct, but it did go through the analysis of first whether the construction of the statute is specified to the Attorney General's discretion. The court found that it had jurisdiction and did a plain language reading of the statute. But the statute, the ALACA court did go beyond the language and looked at the context. And does that give us any indication that the court was concluding the language wasn't so clear and that they needed to look beyond the words to make a conclusion? And can we infer from that that it was at least not holding it was unambiguous, which is brand X? Respectfully, Your Honor, I would say that the court had to have found the statute unambiguous because it's a necessary precursor to its holding that the conviction at issue in ALACA, which the court found not to be an aggravated felony, was also not a particularly serious crime. In doing that, it had to construe the statute as a whole and had to look at the context because part of the statute at issue first starts with the statement that a person convicted of a particularly serious crime is not eligible for withholding in that case. But it also had to consider the modifying language that is in what's being referred to as the hanging paragraph. So that is the context that the court in ALACA had to consider. I don't think that that goes, I don't think that that indicates that the court found the statute to be ambiguous in any way. It rested its decision on a plain language reading. In your brief, there's basically a statement that says the words particularly serious crime should be read consistently. Yes. Okay. I'd like to turn your attention for a minute to the asylum statute. Yes, Your Honor. And the asylum statute uses the words particularly serious crime just like withholding of removal. Yes, Your Honor. And it has a second set off subsection that says aggravated felonies are particularly serious crimes regardless of whether it's more than five years or less. Yes, Your Honor. Which seems to be an issue in the withholding. Are you with me? Yes, Your Honor. Then it continues by saying that the Attorney General may designate offenses to be particularly serious crimes if it chooses to. Yes, Your Honor. If that means, if Congress has already said ag felons are already particularly serious crimes, then by implication other things can be deemed particularly serious crimes. And if we're going to read the particularly serious crime phrase identically, we're going to give it the same meaning, shouldn't then in both instances it be read to mean particularly serious crimes may include aggravated felonies, but more than aggravated felonies can be particularly serious crimes? Do you follow the logic, Jane? Yes, I understand, Your Honor. I believe I do anyway. Okay. Sorry for the web. First of all, the asylum statute and the withholding statutes are different in the sense that withholding is a mandatory form of relief while asylum is a discretionary form of relief. Just focusing on 1158B2AII and looking at that, what you're being asked about the definition? Well, Your Honor, in that subsection it says that the Attorney General may promulgate regulations to advise us of when something that is not an aggravated felony could be considered to be a particularly serious crime, and the Attorney General has not done so. So I would argue that the Board must wait for those regulations in order to be able to designate non-aggravated felonies as particularly serious crimes. That's where I would take that. And would it have to be by regulation that that's your submission? Yes, Your Honor. Because initially this popped up in some of the cases. Yes, Your Honor. And it wasn't done by adjudication. I would say that it has to be done by regulation as it's set forth in the statute. Doesn't that at least give us some indication that Congress was saying things other than aggravated felonies can be particularly serious crimes? That was Congress's direction. Perhaps, Your Honor. I'm not willing to concede that point completely, but that construction that you're referring to appears in the asylum statute and not in the withholding statute. Right. I get that. And I guess that's why I started with if particularly serious crime in both statutory schemes is to mean the same thing. And we know in the asylum statute, Congress tells us that something other than aggravated felonies can be particularly serious crimes. If we go back to withholding, particularly serious crimes could include more than aggravated felonies, and therefore, Allocca was mistaken to say it was limited. I do not believe that we would have to end up there. Because of the way the statute is written, the withholding statute is written, we have one part of the statute, a subsection of the statute, that states people with particularly serious crimes are not eligible for withholding. And then we have a paragraph following that with the modifying language. And in order to give effect to the whole section, we need to consider that modifying language. And in it, it states, okay, aggravated felony, more than five-year term of imprisonment, it is a particularly serious crime. For less than, for a term of imprisonment of less than five years, it may or may not be a particularly serious crime. But in reading that together, that second sentence of the hanging paragraph is referring to an aggravated felony. It's not referring to just any crime. Thank you. Judge McGarvey, any questions? Excuse me? What I was asking, Judge McGarvey, if you had any questions, I did not mean to cut you off because you've been giving counsel some leeway, but I got the feeling you didn't have any more. I'm going to see the floor to the amicus representative. Okay. May it please the Court. I'm Joseph Hellenstein, presenting for amicus, the American Immigration Lawyers Association. I also was counsel on the original ALACA decision, and I do recall some of the focus. And we did have the exact discussion that we had, Judge Schwartz, delineating some of the differences between the asylum and the withholding statute. So I'm here to focus primarily on the plain language of the withholding statute. And first of all, NAM and MH, as BIA decisions, do improperly go into interpreting and stepping into a statute that is plain. And it does so with the presumption that it's ambiguous, and all the other circuit decisions also. Start with the presumption that it's ambiguous. If we look at the actual construction of the statute. Your position is that the circuit, the other circuits who have addressed that, presumed that it's ambiguous, not have found that Chevron Step 1 is amicus? Correct. In other words, they immediately accepted the board at its word that the statute is ambiguous, which recalls. Well, that's different than assuming it's – that's their – they're not disputing it. They're not assuming for the sake of argument it's ambiguous, right? No, they simply adopted the board presumption, but the board doesn't have the expertise to interpret statutory language, particularly when it is unambiguous like this is. And directly to point, that subsection of 231, or 1231, that says the alien, having been convicted by a final judgment of a particularly serious crime, is a danger to the community. I don't see commas. I'm not seeing commas. The only time I see a comma is the alien comma. After that, there's no other commas. The statute actually has a second comma. Some of the decisions, including the NAM decision from the 10th Circuit, permitted the second comma. I'm not aware of the decision. I downloaded this from a USC 1231-B3-B2. And that's an important distinction in the sense that when we look at the two sentences of this hanging paragraph, if we interpret any part of this as allowing any type of crime to be particularly serious without reference to aggravated felony, it essentially reads out both of the first and the second paragraphs of that hanging paragraph. Alternatively, couldn't someone say that by saying only aggravated felonies can be either per se or by discretion particularly serious crimes? There's no reason to have to use both words. Yeah. It could have been more artfully drafted, yes, but it still is clear on its face because if we were to interpret that plain language as allowing any level of non-aggravated felonies to be considered particularly serious under the withholding statute, then we don't need either of those first and second sentences. It is when we said in the RACA that it was. I'm not quite sure where it is. When we said it in the RACA, it meant that it was not ambiguous. Correct. Correct. But in the RACA, they did focus, again, on that second sentence in the subparagraph and specifically said the way this is constructed as an English language grammatical sentence, it has to refer to the first and therefore it adopts the aggravated felony. It's similar to saying when you look at the window that is created by the subparagraph, the aggravated felony and five years delineates the top of the window and a standard aggravated felony without regard to sentence delineates the bottom of the window. How do you reconcile this? We have asylum and withholding in this case. RACA was focused only on the withholding statute. We had both. Exactly. How do we reconcile your defining particularly serious crimes for withholding as only ag felonies and the asylum provision being clear that there are circumstances non-aggravated felonies can also be particularly serious crimes? We're using the same phrase and you're telling us we should interpret it in different ways? The way to do that is, again, to reference the plain language of the statute. The portion of the subsection that talks about the expansion of a definition to non-aggravated felonies in the asylum context does specifically require regulation and presumably rulemaking. An administrative decision cannot substitute for that. That's a different question than whether we should read the words mean aggravated felony in both circumstances or it means something different than the words aggravated felony, not the action that could be taken to designate a particular offense in that category. There's also very important distinctions in the two reliefs that would mitigate against saying they absolutely have to be the same exact definition. Again, the way that Congress constructed it could have been more artful, but it made it clear that the withholding, which is a mandatory relief that is mandated by the protocol and the Convention Against Torture, not simply through the statute. They decided to put that floor level a little higher, and then for asylum, which is the discretionary relief, the floor might be dropped out below, and it can still be. I would acknowledge that that second subsection would allow for the Attorney General, with proper regulation, to take out a hardline test of aggravated felony, but the bottom line is that the straight line in both cases is the same. It's aggravated felony, and then in asylum, the Attorney General has the ability through regulation to drop the floor. In withholding, the Attorney General is mandated if it goes up and above five years. So there's different instructions in the statute for how the Attorney General is to apply whatever either discretion or appropriate standard of law. Does anybody have any questions? I have none. Thank you. Good morning. Good morning, Your Honor. May it please the Court, Benjamin Mark Moss for the Respondent, the Attorney General. Congress gave the Attorney General discretion to say which crimes are particularly serious. Let's start with the LACA. You're waiting to do the asylum part of this. Start with the withholding part of it, and what we said in LACA about how it could have been, I won't go through all the numbers, but subsection B, small ii of 1231. So let me clear up something that I think came up just now. The court's LACA decision did not say that the statute was unambiguous. It did not say that. That's the issue. Do we have to use the word unambiguous to pronounce something sufficiently clear for presidential purposes? I think the answer just comes back to Brand X, which says, quote, the court must hold that the statute unambiguously requires the court's construction, end quote. Brand X was talking about what case primarily? Chapman? I don't recall, Your Honor. Okay, it was Chapman. If you look at Chapman, you won't find the word unambiguous. So in Brand X, the court said that the pronouncement has to be, the statute has to be unambiguous. But in Chapman, the pronunciation and the elucidation of the statute did not use the word unambiguous. So it's clear, it seems to me, the Supreme Court is saying as long as the statute is clear, say unambiguous, say clear, as long as we know what the statute means, then there's no room for the discretion of the attorney general to operate, the shotgun goes out the window. But you're saying that that's not the case, that the word unambiguous, using specifically a shotgun, unless our prior court said, prior panel said unambiguous, that there's room for discretion to operate, even though that's not what the court said in Brand X. I wouldn't go as far, Your Honor, to say that the court has to always use magic words. I would say that that's certainly a good indication, not using the phrase that the Supreme Court says you're supposed to use. The court didn't actually say that in a shotgun. You backed into there, but you weren't going to back. Right. So if we look at the, looking again at the decision, we do have the words suggest and implies in the Allocca decision, which do give the reader the sense that the court was doing some kind of an interpretation of an ambiguous statute. And six other courts have ruled against, or at least have not followed Allocca. Five of them say that in Allocca we said the statute was ambiguous. They just disagree with the holding and the analysis in Allocca. I read them a little differently. I think that there are several cases that say, I think there are several other circuits that have recognized multiple different ways that one could read the statute, and ambiguity that would then authorize it. They may have recognized different ways of reading the statute. I'm asking whether or not they looked at Allocca differently. They seem to just disagree with our holding in Allocca. I think they definitely do disagree with the court's holding in Allocca. My understanding is that they did think that it was an ambiguous statute. I'm not sure I'm quite reaching. And most of those cases were decided after five, I think all but one was decided after NAM, right? So they were in a different place. They were in Chevron land, so they're going to be more overt on making a declaration about ambiguity before they decided on deference. That's right. We have 2006, 2009, 2011, 2010, 2008, 2013. All of those are, or at least most of those are after NAM, which was 2007. And at that point, at the point that Allocca was issued, the agency had not yet fully addressed the meaning of all the references in the statute. And so there wasn't this ground on which to assess the agency's viewing of the statute, which we believe is owed deference. So in order for you to prevail here, we would have to conclude Allocca was incorrect, right? I think there are two ways. Okay, tell us. That's exactly where I was going. Tell us the two ways that a three-judge panel could not be required to file Allocca. I think so. Okay, let me just add a caveat ahead of time. First, Allocca did not apply to asylum. It only expressly applied to the holding. That's why I limited you to that statute. Exactly. So we would just ask parenthetically that if the court were to rule against the government, at least please limit the decision to what Allocca held, which didn't hold on asylum. But here's how we think that the court could get around Allocca, which I think I have some serious questions about. I think other courts have had those questions too. So one is a conclusion that the brand X power was appropriately exercised based upon a conclusion that the Allocca decision did not do what it should have done if it were to say this statute has plain language, that the agency no longer has discretion to interpret. Well, let's be fair to the Allocca panel. There was no agency decision to look at, so they weren't in their mindset, wouldn't necessarily have been in a Chevron-type perspective. So we have to, in order for us to apply brand X, which I gather is one of the avenues, we have to conclude that our Allocca panel was not viewing the statute as unambiguous. Exactly. That's exactly one of them. So what is the second way that we could find ourselves as a three-judge panel not bound by Allocca for at least the withholding statute? Yes, Your Honor, the second way that a three-judge panel, this panel, would be to follow the holding of Dennis, which says, quote, So you're saying that our subsequent opinion in Dennis, which seemed to adopt NAM, is a development in the law that wasn't available to Allocca, it's not inconsistent with Allocca because Allocca didn't have NAM? Well, I would agree with most of that, except that I do think that Dennis is in tension with Allocca, and I think that this panel is going to have to follow either Allocca or Dennis. It's clear in the IOPs that Dennis is in tension with Allocca if you follow Allocca and not Dennis, and the Allocca was before brand X, was a year before the Supreme Court decided brand X. It's a calendar year. It may not have been 12 months. It was a calendar year before the Court decided brand X. And I acknowledge the IOPs, Your Honor, and I also acknowledge that en banc, an initial en banc, is an extraordinary remedy, which is why we haven't gone out and actually petitioned the Court for it, but just there is kind of a third remedy lurking in the wings here, in addition to those two avenues. There is this concept under the al-Sharif case where this Court has recognized that there is an occasion to sui sponte, engage in en banc. What it really comes down to, though, is that Allocca was just wrong one way or another. It missed crucial language of the statute. But that doesn't help us unless we en banc. The case that I had, it had those backwards. Brand X, that's what gave us brand X is 2005, and then Allocca is 2006. So we knew about the language and instruction in brand X at the time Allocca was decided. Still didn't use the magic word there. And you argue that because we did not use the magic word, that suggests that the Allocca panel didn't conclude with the magic word necessary to express that there was no ambiguity in the withholding part of the statute. Yes, but also, Your Honor, not only did the Allocca Court not use the magic words, but also it said that the, and I want to quote it exactly right, it used language, here it is, suggests and implies. And that's, even if we, even if the Court were to say you don't need magic words to brand X, or I'm sorry, even if, want to be articulate here, you know what I'm saying, there's clear context from reading the Allocca decision that that Court was engaging in some interpretation of an ambiguous statute. And the statute really is ambiguous. I think we should come back to that. There are at least two different ways to read the withholding statute. You could read that first section, the way the government reads it, to say that major rule is that, quote, under subsection 2, the alien having been convicted by final judgment, and so on, is a particular, has a particular serious crime. That's the main rule. And then if you look down at the hanging paragraph, there is a subset of that main rule that explains, okay, here's what you do in the context of aggravated felonies. But that doesn't take away the general idea that the Attorney General still has to decide, consistent with the asylum statute as well, which is a subordination. Yeah, but we still match a word when we say consistent with the asylum statute. It may well be that, as was argued by Cargill on the other side of the room, that given the difference in the implication of what happens when an alien gets withholding, it's mandatory, a person can't be deported, as opposed to asylum, that Congress may have decided, well, because there's still discretion to be part of the Attorney General, that it can be exercised on a case-by-case basis. There may be situations where a given person should not be deported, and we want to have the Attorney General to have that discretion, and therefore with relief of discretionary asylum, we're going to go a little bit further than we did with withholding and allow the Attorney General to promulgate regulations which would protect people who could not be protected for purposes of mandatory withholding. That makes sense. It sure does. Therefore, Congress may not have thought of it, but I can see why that would be the distinction within the statute. It could have been a distinction, Your Honor, but it's not the only reading, and crucially for Chevron purposes and Brand X, when there is a reasonable interpretation that the agency supplies, the court is bound to give some deference to that. And what do you mean for deference? I know, it's if the court has already... Exactly. Let me touch on another point that came up, this issue of the asylum authority to promulgate regulations that are describing categories of particularly serious crimes that are not necessarily aggravated felony. I think that hits it right on the head, but I disagree with the idea that just because the Attorney General has the authority to issue the regulations, I don't think that means that the Attorney General cannot, by adjudication, also designate particularly serious crimes. Going to the text of that statute, 8 U.S.C. 1158 B.2.B. 2, it says the Attorney General may designate. It doesn't say shall, right? So the fact that Congress is giving permission... If it says shall, that requires the promulgation of the regulation, and Congress may not want to require the Attorney General to promulgate it. You probably could come up with a wording that would limit it to regulations or adjudication without requiring the Attorney General to take action, but it's hard. It seems to me what Congress is doing there is saying that you can go further than this, and if you're going to go further than this, they do this by regulation. They're saying that's not so. Congress is saying that if you're going to go further than this, you can't do it by regulation. Yes, I think that the statute I just quoted does not preclude the Attorney General from designating additional particularly serious crimes by adjudication, even though it does explicitly empower him or her to do so by regulation. Absent that provision, would the Attorney General be able to, by adjudication, designate additional crimes, or wouldn't the Attorney General be bound by the text of the statute? No, Your Honor, the Attorney General did not need that provision to, by adjudication, designate additional crimes as particularly serious. Where does this authority come from then? That comes from the statute right here. I think the quote in the brief is the Attorney General's general authority to supervise the administration of regulation. General versus specific control and dependence of statutory construction. So if you take the general authority of the Attorney General in one provision, and then you have a very specifically tailored provision in another part of a statute, dealing specifically with this matter, clearly that subsequent statute would control. Where does that come from? I think only if it's inconsistent, though. I think that's where we see it from. Well, it is inconsistent the way you're positing it, because you're saying that even without this provision, the Attorney General would have, based upon general authority, the power to promulgate by adjudication. Yes, which is just how the Board of Immigration Appeals makes decisions in all sorts of cases. In fact, it has. And those cases have been affirmed by the appellate reviewing courts, right? Including this court has favorably commented on NAM in the Dennis case. It's not remarkable to hold that the Attorney General has the authority and the discretion to, on a case-by-case basis, interpret the INA. And that's really what I think that question goes to. Even while Congress specifically limits the authority? I don't agree with the premise, Your Honor. Well, you can't, because then you lose the authority. Well, it's not just that I think I would lose it. I agree with that. I really do. I'm reading that statute where it says Attorney General may designate. And I don't think may designate means also may designate but may not adjudicate. The court has said that if Congress meant that. The offensive issue for this particular petitioner, the maximum penalty by statute was a year. Is that right? That's right, Your Honor. Yes. And as a result, under federal law, that would be a misdemeanor? I believe so, Your Honor. And as a result, does that matter? Does it matter whether it's – therefore, it could never be an aggravated felony because it couldn't be a felony. So the only way that this could be upheld is that that particularly serious crime means something other than felony, correct? I believe so. I would want to research that just to make sure it couldn't ever be an aggravated felony. But I'm pretty sure in this case this was only ever going to be, if anything, a particularly serious crime from our context. Okay. And there's been – there's some cases that things that we would think of as a federal misdemeanor have been designated as particularly serious crimes. Is that right? So I think the answer is yes. By BIA in adjudications of case-by-case cases in front of them, not by regulation. Yes, that's right. And also, on that point, let me call the Court's attention to two crimes which are definitely things that one might think of as particularly serious even if they are not considered to be aggravated felonies. And I have it on the page somewhere. I don't – I'm not finding here.  Very good, Your Honor. But they are, like, control over dangerous biologic weapons and tampering with consumer goods. I think aside from the brief. And I do see my time is up. Just before I conclude, any further questions? Your Honor, the Elaka case unfortunately just missed an important section of the statute. It read some language out of it that this Court has the opportunity to fix. And the Board recognized that in walking – what was it? A bit of a fine line in finding that it had the power to use Brand X to supply its own interpretation. I guess it was a fine line. It's kind of like a roller board going down the boulevard. But I understand your argument. Thank you, Your Honor. Okay. And I believe Ms. Corkman should be here some time. Yes, Your Honor. Did I pronounce your name correctly? Excuse me, Your Honor? Did I pronounce your name correctly? Corpus. Okay. Avis. Your Honor, I'm going to cede a portion of my rebuttal time to Mr. Hohenstein as amicus. Interesting. I never saw that before. It's a big bait and switch. I do want to respond to the government's characterization of Dennis as supportive of what the BIA did in NOM. Simply by pointing out that in Dennis, the petitioner there had been convicted of an aggravated felony. And the comments made by the Third Circuit in reaching its determination in Dennis are necessarily circumscribed by the issue that was before it. So it's our position that where Dennis talks about discretion, it's limited to the discussion that's available in the second part of that hanging paragraph. Aggravated felonies with a sentence to a term of imprisonment of less than five years. I'd also like to point out that in our case, the real person that is the subject of this case is considered by the government to have been convicted of a particularly serious crime when that crime was a misdemeanor, where there was no admission to facts, no admission to guilt, because it was a no-load plea. And where are the standards, then, if we don't have the plain language reading of the statute in ALACA? Where are the standards? Where does it stop? You know, the government said in their brief that there's a waiver of the challenge that this offense was a particularly serious crime. Let me ask you about that, too. Why isn't there a waiver of that? The way I read the government's brief is that the waiver was, the supposed waiver was of the issue of how the BIA reached the determination that it was a particularly serious crime. Did you say that the immigration judge's ruling was correct in all legal respects? Am I wrong about that? We said that the immigration judge's ruling is correct in all respects, yes, Your Honor. And the BIA ruled only on one portion and left the rest of the immigration judge's ruling intact. Right, which would have been correct. If it's correct in all respects, the one portion of all, it's still within the big circle. It's still within all. I'm not sure I understand. You're saying that the immigration judge's decision was correct in all respects, but the BIA, beyond that one respect, and you're taking issue with some of the other issues that the BIA adjudicated, but those are still within the universe of things that you said the IJ got right, aren't they? The immigration judge got the particularly serious crime analysis right. Correct. Yes, yes, that is our position. Okay. And further, our position is that the board in NOM did not have the authority to do what it did with a Third Circuit case in light of ALACA's ruling. Okay.